EMA FINANCIAL, LLC, a Delaware
Limited Liability Company,

                      Plaintiff,

       -against-

JOEY NEW YORK, INC., a Nevada
Corporation, RAR BEAUTY, LLC, a Florida
Limited Liability Company, LABB, INC., a
Florida Corporation, REFLEX
PRODUCTIONS, INC., a Florida
Corporation, and JOEY CHANCIS, a Citizen
of Florida,

                      Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/22/2019

17-CV-9706 (VSB)

**OPINION & ORDER**

Appearances:

Jeffrey Fleischmann
Law Offices of Jeffrey Fleischmann, PC
New York, New York
*Counsel for Plaintiff*

Erica K. Doran
Law Offices of Erica Doran
Syosset, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiff EMA Financial, LLC ("Plaintiff") brings this action against Defendants Joey New York, Inc. ("Joey New York"), RAR Beauty, LLC ("RAR"), LABB, Inc. ("LABB"), Reflex Productions, Inc. ("Reflex"), and Joey Chancis (collectively, "Defendants"), asserting causes of action for specific performance, a permanent injunction, breach of contract, and fraud arising from the conduct of Defendants in connection with certain agreements to purchase

securities and related convertible note agreements. Defendants bring a counterclaim against Plaintiff for fraudulent inducement. Before me are: (1) Plaintiff's motion for partial summary judgment as to the causes of action for breach of contract, breach of guaranty, and attorneys' fees and costs; and (2) Plaintiff's motion to dismiss Defendants' counterclaim and affirmative defenses. Because the agreements entered by the parties were not usurious, Plaintiff's motion for summary judgment is GRANTED as to liability on the second, fourth, and sixth claims for relief. Because Defendants did not plead their counterclaim with sufficient particularity, Plaintiff's motion to dismiss the counterclaim is GRANTED. Plaintiff's motion to dismiss the affirmative defenses is DENIED as premature.

## I. Background

Plaintiff and Defendant Joey New York entered into Securities Purchase Agreements on February 1, 2017 (the "First SPA") and on May 3, 2017 (the "Second SPA"). (Defs.' 56.1 ¶¶ 1, 7.)[1] These transactions were executed to provide Defendant Joey New York and its CEO, Joey Chancis, with the necessary capital to expand their in-store Botox and beauty treatment business in Florida. (*Id.* ¶ 3.)

The First SPA provided for the purchase of a Convertible Redeemable Promisory Note from Joey New York to Plaintiff for $90,000 (the "First Note"), (*id.* ¶ 1), and the Second SPA provided for the purchase of a Convertible Redeemable Promisory Note from Joey New York to Plaintiff for $151,600 (the "Second Note"), (*id.* ¶ 7).[2] Both the First SPA and the Second SPA contained an unconditional and unlimited guaranty whereby Defendants RAR, LABB, and

---

[1] "Defs.' 56.1" refers to the Annotated Response of Defendants Joey New York, Inc., RAR Beauty LLC, LABB, Inc., Reflex Productions, Inc., and Joey Chancis to Plaintiff EMA Financial LLC's Rule 56.1 Statement, filed April 2, 2018. (Doc. 31-1.) Unless otherwise indicated, the facts asserted by Plaintiff are undisputed by Defendants.

[2] The First SPA, Second SPA, First Note, and Second Note are collectively referred to as the "Agreements."

2

Reflex agree to guarantee the payment and performance on the First and Second Notes, respectively. (*Id.* ¶¶ 2, 8.) Pursuant to the terms of the Agreements, Plaintiff timely wired the funds to Joey New York. (*Id.* ¶¶ 4, 9.)

The terms of the two Notes are essentially identical, including, *inter alia*:

- Plaintiff has the right, at any time, to convert all or any part of the outstanding amount due under the Note into shares of Common Stock, and may exercise that right by submitting Notice of Conversion to Joey New York. (*Id.* ¶¶ 10, 12.)

- The price for such conversion is the "lower of: (i) the closing sale price of the Common Stock on the Principal Market on the Trading Day immediately preceding the Closing Date, and (ii) 65% of the average of the lowest two (2) sale prices for the Common Stock on the Principal Market during the twenty (20) consecutive Trading Days immediately preceding the Conversion Date or the closing bid price." (*Id.* ¶ 11.)

- Joey New York must hold a reserve of shares equal to five times the number issuable upon conversion of the Note. (*Id.* ¶ 13.)

- Once Joey New York receives a Notice of Conversion from Plaintiff, it has an absolute and unconditional obligation to deliver the stock within three business days. (*Id.* ¶¶ 14–15.)

- If Joey New York fails to issue shares to Plaintiff for five business days after receipt of a Notice of Conversion, Joey New York is in default. (*Id.* ¶ 16.)

- Breaches include, *inter alia*: (1) breach of any material covenant, term or condition; (2) false or misleading representation or warranties; (3) failure to comply with reporting requirements of the United States Securities and Exchange Commission ("SEC"). (*Id.* ¶¶ 17–19.)

Notwithstanding these terms, Joey New York failed to submit Form 8(k) to the SEC on July 25, 2017 and again on October 20, 2017, as required by both the Notes and the SPAs. (*Id.* ¶¶ 22, 25–26.) On October 20, 2017 and on November 14, 2017, Plaintiff submitted Notices of Conversion to Joey New York, exercising its rights under the Agreements to convert a certain amount of the principal into shares. (*Id.* ¶¶ 23–24.) Plaintiff sought in both of the Notices of

3

Conversion to convert principal into 100,000 shares of common stock. (Preston Decl. Exs. E, F.)[3] Joey New York did not deliver the shares. (Defs.' 56.1 Counterstatement ¶ 24.)[4]

## II. Procedural History

Plaintiff initiated this action by filing the Complaint on December 11, 2017. (Doc. 1.) On January 23, 2018, Defendants filed an answer, which included fifteen affirmative defenses, and a counterclaim for fraudulent inducement. (Doc. 18.) On February 11, 2018, Plaintiff filed an answer to the counterclaim. (Doc. 21.) On March 5, 2018, Plaintiff filed a motion seeking summary judgment on its second, fourth, and sixth causes of action, pursuant to Federal Rule of Civil Procedure 56, and requesting that I dismiss Defendants' counterclaim and affirmative defenses, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 23.) In support of its motion, Plaintiff submitted a declaration with exhibits, (Doc. 24), a Local Rule 56.1 Statement, (Doc. 25), and a memorandum of law, (Doc. 26). On April 2, 2018, Defendants submitted a memorandum in opposition, (Doc. 29), which was supported by a declaration, (Doc. 30), and a Local Rule 56.1 counterstatement, (Doc. 31-1). On April 16, 2018, Plaintiff filed a reply memorandum, (Doc. 34), which was supported by an affidavit with one exhibit, (Doc. 35), and a supplemental Local Rule 56.1 statement, (Doc. 36).

## III. Legal Standards

### A. *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

[3] "Preston Decl." refers to the Declaration of Felicia Preston, filed March 5, 2018. (Doc. 24.)

[4] "Def.'s 56.1 Counterstatement" to the Annotated Response of Defendants Joey New York, Inc., RAR Beauty LLC, LABB, Inc., Reflex Productions, Inc., and Joey Chancis to Plaintiff EMA Financial LLC's Rule 56.1 Statement, filed April 2, 2018. (Doc. 31-1.)

4

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "The same standard[s] appl[y] where, as here, the parties file[] cross-motions for summary judgment . . . ." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (internal citation omitted.)

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B. *Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

6

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. A.T. & T. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## IV. Discussion

### A. *Motion for Summary Judgment*

Prior to the parties engaging in any discovery, Plaintiff filed a motion seeking summary judgment on its second (breach of contract), fourth (breach of guaranty), and sixth (costs, expenses & attorneys' fees) claims for relief. "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "[C]ourts generally are reluctant to grant summary judgment when the non-moving party has not had an adequate opportunity for discovery," but this "by no means is a prohibition on the entry of judgment" prior to discovery. *Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991). "In appropriate circumstances, summary judgment may be granted prior to discovery." *Ali v. City of New York*, No. 11 Civ. 5469(LAK), 2012 WL 3958154, at *3 n.10

(S.D.N.Y. Sept. 5, 2012). A party seeking to avoid summary judgment before discovery has been conducted "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989). Defendants submitted no such affidavit objecting to summary judgment as premature. Instead, as discussed below, Defendants argue that the Agreements upon which Plaintiff seeks summary judgment violate New York law and are void and unenforceable, and that any breach of the Agreements is subject to affirmative defenses. I address Plaintiff's summary judgment motion on its claims for breach of contract, breach of guaranty, and costs, expenses & attorneys' fees in turn below.

### 1. Breach of Contract

Defendants do not dispute that: (1) Joey New York failed to file its Form 8(k) with the SEC when it was due; (2) Joey New York received a Notice of Conversion from Plaintiff; (3) Joey New York failed to deliver unrestricted shares of its stock, and (4) Joey New York received a Notice of Default from Plaintiffs on or about October 31, 2017. (*See* Defs.' 56.1 Counterstatement ¶¶ 22–26, 29–30.) Essentially, Defendants concede that Joey New York breached the terms of the SPAs and Notes. Rather, Defendants argue only that Joey New York cannot be held liable for its failure to perform under the Agreements because the Agreements purportedly violate New York's laws against usury and were therefore void *ab initio*. (*See* Def.'s Opp. 5–17; *see also* Defs.' 56.1 Counterstatement ¶¶ 46, 48.)[5] In the alternative,

---

[5] "Defs.' Opp." refers to the Memorandum of Law in Support of Defendants Joey New York, Inc., RAR Beauty LLC, Reflex Productions, Inc., and Joey Chancis's Opposition to Plaintiff EMA Financial LLC's Motion for Partial Summary Judgment and Dismissal of Defendants' Counterclaim and Affirmative Defenses, filed April 2, 2018. This document appears to have been filed twice. (*See* Docs. 29, 31.)

8

Defendants argue that Joey New York should not be held liable for breach of the Agreements because any such breach was caused by Plaintiff's violation of the covenant of good faith and fair dealing. (*See* Defs.' Opp. 17–20.) I address each argument in turn.

    a. <u>Usury</u>

Statutes prohibiting usurious loans are intended "to protect desperately poor people from the consequences of their own desperation." *Schneider v. Phelps,* 41 N.Y.2d 238, 243 (1977). "Corporations—generally the antithesis of . . . 'desperately poor people . . . —are ordinarily barred from asserting a usury defense." *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 740 (1992) (citing N.Y. Gen. Oblig. L. § 5–521(1)). However, "the criminal usury statute, unlike the civil statute barring loans of interest exceeding 16 percent, does apply to loans made to corporations." *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (citing N.Y. Gen. Oblig. L. § 5–521(3)). "Under New York law, a contract is criminally usurious, and thus void, when the parties knowingly provided for an interest rate of 25% or more." *Union Capital LLC v. Vape Holdings Inc.*, No. 16 Civ. 1343 (RJS), 2017 WL 1406278, at *4 (S.D.N.Y. Mar. 31, 2017) (citing N.Y. Penal L. § 190.40.) "When a note is not usurious on its face, a court will not presume usury; rather, the party asserting the defense must prove all the elements. An essential element of the affirmative defense of usury is the lender's usurious intent." *Concord Fin. Corp. v. Wing Fook, Inc.,* No. 96 Civ. 5293(DLC), 1997 WL 375679, at *5 (S.D.N.Y. July 7, 1997) (internal citations omitted). "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." *Gandy Mach., Inc. v. Pogue,* 483 N.Y.S.2d 744, 745 (3d Dep't 1984) (internal citation omitted); *see also Lehman v. Roseanne Investors Corp.*, 483 N.Y.S.2d 106, 108 (2d Dep't 1984) ("[T]here is a strong presumption against the finding of usurious intent and . . . a loan is not

usurious merely because there is a possibility that the lender will receive more than the legal rate of interest.")

Plaintiff argues that a "securities purchase agreement and related notes are an investment and not a 'loan or forbearance' as contemplated by General Obligations Law (GOL) § 5-501 and Penal Law §190.40," and therefore the usury laws do not apply. (Pl.'s Mem. 22 (citing *Bridgepointe Master Fund Ltd. v. Biometrx, Inc.*, 09 Civ. 6874 (PAC), 2009 WL 4756440, at *4 (S.D.N.Y. 2009)).)[6] However, Plaintiff makes no attempt to distinguish the nature of the transactions set forth in the Agreements from the transactions discussed in *Union Capital*, where Judge Richard Sullivan assumed that substantively similar agreements constituted loans and engaged in a detailed discussion of whether they violated New York's usury laws. 2017 WL 1406278, at *1, 4–5. As explained below, I find that even if the Agreements are loans, they do not violate New York's laws against usury, therefore I need not reach the question of whether they are in fact loans. In *Union Capital*, Judge Sullivan explained:

> [The borrower] argues that, in considering the effective interest rate, the Court should also include the potential profit [the lender] might reap by converting shares at a 42% discount. The Court disagrees. [The lender] simply held an option to convert shares, and it could have elected to obtain repayment in cash, which would clearly not have been usurious. Moreover, even if [the lender] chose to convert the loan principal into shares, any potential profit [the lender] might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation. Furthermore, even if the discount rate could be considered[,] a usury defense could no longer be applied against the loan once the Note principal was converted into equity in [the borrower].

*Id.* at *5 (internal citations omitted).

---

[6] "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of Its Motion for Partial Summary Judgment and to Dismiss the Counterclaim, filed March 5, 2018. (Doc. 26.)

10

Defendants fail to explain why this central holding from *Union Capital* should not apply here. Here, as in *Union Capital*, Plaintiff merely held an option to convert shares at a discount. Because Plaintiff could have elected to obtain repayment of the principal in cash at an interest rate that Defendants do not assert would exceed twenty-five percent,[7] the Agreements were not usurious on their face, and Defendants' argument that they are unenforceable fails. *See id.*; *see also*, *Phlo Corp. v. Stevens,* No. 00 Civ. 3619(DC), 2001 WL 1313387, at *5 (S.D.N.Y. Oct. 25, 2001) ("[I]t was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain.")

In addition, the law is clear that "[w]hen a note is not usurious on its face, a court will not presume usury; rather, the party asserting the defense must prove all the elements." *Concord Fin. Corp.*, 1997 WL 375679, at *5 (internal citations omitted). Having failed to demonstrate that the Agreements are usurious on their face, Defendants do not even attempt to prove the elements of a usury defense. Therefore, Defendants' attempt to invoke the defense of usury also fails because Defendants' have not proven each of the elements of the defense. *See, e.g.*, *Phlo Corp.*, 2001 WL 1313387, at *4–5 (rejecting a usury defense where party failed to demonstrate usurious intent by "clear, unequivocal and convincing proof").

Defendants also argue that the default provisions of the Agreements include interest rates that violate New York's criminal usury statutes. (*See* Defs.' Opp. 14–16.) "[T]he state of the law regarding whether New York's criminal usury cap applies to defaulted obligations is not entirely settled." *Adar Bays, LLC v. Aim Exploration, Inc.*, 285 F. Supp. 3d 698, 705 (S.D.N.Y. 2018). I am aware that courts have recently found the criminal usury laws apply to defaulted

---

[7] Indeed, it appears that if Plaintiff had not exercised its rights to convert a portion of the principal due under the Agreements into shares, and if Joey New York had repaid the principal in full by the maturation date, Joey New York would not have been obligated to pay any interest at all. (*See* Preston Decl. Exs. A–D.)

11

obligations. *See, e.g.*, *Union Capital*, 2017 WL 14066278, at *8; *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 140–46 (S.D.N.Y. 2017). However, I elect to follow the majority rule that "usury laws do not apply to defaulted obligations." *Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63 n.3 (2d Cir. 1986); *see also LG Capital Funding, LLC v. One World Holding, Inc.*, No. 15-CV-698 (SJ)(JO), 2018 WL 3135848, at *11 (E.D.N.Y. June 27, 2018) (collecting cases that follow the *Manfra* rule and declining to follow the holdings of *Union Capital* and *Madden*); *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, No. 16-CV-5176 (JPO), 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017) ("[T]he defense of usury does not apply where . . . the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum *only after default or maturity*." (quoting *Kraus v. Mendelsohn*, 948 N.Y.S.2d 119, 120 (2d Dep't 2012)). I therefore find that the default provisions in the Agreements do not render them void as a matter of law.[8]

Accordingly, I find that Defendants have failed to "meet [their] heavy burden in impeaching the transaction for usury." *Union Capital*, 2017 WL 1406278, at *5.

### b. Breach of the Covenant of Good Faith and Fair Dealing

Defendants also assert, as an affirmative defense, that Plaintiff is not entitled to summary judgment because it breached the covenant of good faith and fair dealing. (Defs.' Opp. 18–20.) Specifically, Defendants allege that "despite its representations and assurances to the contrary, Plaintiff engaged in an almost immediate campaign of aggressive selling of converted Joey New York stock, knowingly putting undue pressure on the stock's per share market price and driving the price down precipitously." (*Id.* at 19.) As an initial matter, Defendants did not include a

---

[8] Defendants also argue that the requirement in the First and Second Note that Joey New York keep in reserve five times the number of shares that is actually issuable upon full conversion of each note renders the Notes usurious. (*See* Defs.' Opp. 12–13.) Defendants do not cite to any legal authority in support of this novel theory, and I am aware of none.

12

breach of the covenant of good faith and fair dealing defense among the fifteen affirmative defenses pleaded in their answer, thereby waiving this defense. *See Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) (noting that "a failure to plead an affirmative defense results in a waiver"); *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004) ("If an affirmative defense is neither pled nor tried with the parties' consent, the defense is usually waived."). Even if the good faith and fair dealing defense had not been waived, Defendants' argument fails on the merits.

The covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (2002) (internal quotation marks omitted). "Nevertheless, the duties imposed by an implied covenant of good faith and fair dealing are 'not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). Here, the Agreements expressly give Plaintiff the right "to convert all or any part" of the principal into shares of common stock, and they impose on Joey New York an "absolute and unconditional" obligation to issue and deliver the stock upon receiving a Notice of Conversion. (*See* Preston Decl. Ex. A §§ 1.2(a), 1.4(e); *id.* Ex. C, §§ 1.2(a), 1.4(e).) The Agreements also recognize Plaintiff's right to sell shares, and impose no limits on Plaintiff's right to do so. (*See id.* Ex. B § 4(d); *id.* Ex. D § 4(d).)

Conduct that is contemplated and authorized by the express terms of the Agreements cannot be barred by any implied obligation. *See DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ.

13

318(RJS), 2009 WL 2242605, at *38 (S.D.N.Y. July 27, 2009) ("Defendants did not violate the implied covenant of good faith and fair dealing by acting in their own self-interest consistent with their rights under a contract." (internal quotation marks omitted)). "Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable." *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006); *see also*, *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." (internal quotation marks omitted)).

Accordingly, Defendants' affirmative defense of breach of the covenant of good faith and fair dealing was waived, and, even if it were not waived, would fail as a matter of law. Therefore, Plaintiff's motion for summary judgment on the second claim for relief for breach of contract is granted as to liability.

## 2. Breach of Guaranty

Defendants do not dispute that the First SPA and Second SPA each contain an unconditional guaranty, whereby Defendants RAR, LABB, and Reflex guaranteed Joey New York's obligations under the agreements. (Defs.' 56.1 Counterstatement ¶ 46.) Indeed, Defendants do not even address Plaintiff's arguments regarding the liability of RAR, LABB, and Reflex under the guaranty provisions of the Agreements. (*See generally* Defs.' Opp.)

Accordingly, Defendants' concede liability, s*ee Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."), and Plaintiff's motion for summary judgment on the fourth claim for relief is granted as to liability.

### 3. Costs, Expenses, and Attorneys' Fees

Similarly, Defendants do not dispute that the Agreements required Joey New York to pay all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in collecting any amount under the notes or for breach of any of the agreements. (Defs.' 56.1 Counterstatement ¶ 48.) They also do not address Plaintiff's arguments regarding liability for this claim for relief in their opposition brief.

Accordingly, Defendants' concede liability, s*ee Norton*, 145 F.3d at 117, and Plaintiff's motion for summary judgment on the sixth claim for relief for costs, expenses, and fees incurred related to the second and fourth claims for relief is granted as to liability.

### B. *Motion to Dismiss*

#### 1. Counterclaim

##### a. Applicable Law

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this Rule, a counterclaim for fraud in the inducement "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "Rule 9(b) serves the goal of putting the party accused of a fraudulent act on notice as to the precise misconduct with which it is charged; accordingly, the complaint must allege facts that give rise to a strong inference of fraudulent intent." *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 445 (S.D.N.Y. 2014) (internal quotation marks omitted). In other words, allegations "must identify the specific who, what when, where, and how of the material misrepresentation or omission." *Lumos Tech. Co. v. JEDMED*

*Instrument Co.*, No. 16cv6939(DLC), 2017 WL 1322213, at *1 (S.D.N.Y. Apr. 10, 2017) (internal quotation marks omitted).

       b. Application

  Defendants' counterclaim for fraud in the inducement alleges that "Plaintiff made material misrepresentations, including promises regarding how Plaintiff would manage the stock transferred to it pursuant to various agreements" and made "assurances that it would retain ownership of the [Joey New York] stock and would not sell it." (*See* Answer 19 ¶¶ 1–2.)[9] Although Plaintiff is a corporation, Defendants do not identify any specific officer who made these alleged misrepresentations and they do not state where the statements were made or the date and time at which they were made. In other words, they do not identify the "who," the "where" or the "when" of the alleged misrepresentation or omission. *See Lumos Tech.*, 2017 WL 1322213, at *1. Accordingly, Defendants' counterclaim for fraudulent inducement lacks the detail required by Rule 9(b) and must be dismissed. *See Mills*, 12 F.3d at 1175 (affirming the dismissal of fraud claim where allegations failed to link "the alleged fraudulent statements to particular Directors" because "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").

      **2. Affirmative Defenses**

  Plaintiff also requests that I strike all of the affirmative defenses asserted by Defendants' in their answer. (*See* Pl.'s Mem. 20–23; Answer 16–19.) The briefing from both parties on this issue relies on sweeping and conclusory characterizations of the defenses and is unsupported by persuasive legal authority. In any event, "I see no reason to address the motion to strike the

---

[9] "Answer" refers to the Answer of Defendants Joey New York, Inc., RAR Beauty LLC, Reflex Productions, Inc., and Joey Chancis to Plaintiff EMA Financial LLC's Complaint, filed January 23, 2018. (Doc. 18.)

16

affirmative defense[s] at this stage of the litigation inasmuch as the defense[s] require[ ] no responsive pleading or other action on [P]laintiff's part. Should the case ever come before a jury, the matter can be addressed at that time." *Sosland Publ'g Co. v. Mulholland*, No. 87 CIV. 8432 (MBM), 1988 WL 87335, at *2 (S.D.N.Y. Aug. 17, 1988).

Accordingly, Plaintiff's motion to strike the affirmative defenses is denied without prejudice, except to the extent that a defense is precluded by any finding in this Opinion & Order.

V. **Conclusion**

For the foregoing reasons: (1) Plaintiff's motion for summary judgment on the second, fourth, and sixth claims for relief is GRANTED as to liability; (2) Plaintiff's motion to dismiss Defendants' counterclaim is GRANTED; and (3) Plaintiff's motion to dismiss the affirmative defenses is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the open motion at Document 23.

SO ORDERED.

Dated: September 22, 2019
New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge