UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
EMA FINANCIAL, LLC,                                         :
                                                            :
                                  Plaintiff,                :
                                                            :     17-cv-9706 (VSB)
                  -against-                                 :
                                                            :     **ORDER**
JOEY NEW YORK INC., et al.,                                 :
                                                            :
                                  Defendants.               :
                                                            :
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2021
```

<u>VERNON S. BRODERICK</u>, United States District Judge:

As discussed during the August 17, 2021 trial day held in the above-captioned case, it is hereby:

ORDERED that the parties are directed to address the following questions and issues in their post-trial briefing, which is due on September 3, 2021. In addressing the questions, the parties should cite to case law as well as to any facts in the record that support their answer.

1. On the issue of damages, Plaintiff has argued that any monies that it has earned from conversions and sales of Joey New York, Inc. stock are irrelevant to the contractual damages analysis—even if Plaintiff were to receive a windfall. "Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *LG Capital Funding, LLC v. Cardiogenics Holdings, Inc.*, 787 F. App'x 2, 3 (2d Cir. 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)); *see also Indu Craft v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) ("[T]he general rule for measuring damages for breach of contract has long been settled. It is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.").

   a. What terms of the contract(s) allow or would permit Plaintiff to earn money from the conversions and sales of Joey New York, Inc. stock above the amount of the loan and the contractually agreed upon interest?
   b. How does Plaintiff square its argument on damages with the above case law stating that compensatory damages for breach of contract "cannot put the non-breaching party in a better financial position than they would have occupied

>   but for the breach," nor can they give the non-breaching party a "windfall"? *State of N.Y. v. United Parcel Servs.*, 15-cv-1136 (KBF), 2016 WL 4735368, at *10 (S.D.N.Y. Sept. 10, 2016) (internal quotation marks omitted).

2. What is the definition of "insolvent"?

    a. At what point(s) in time, if at all, were any of the corporate entities insolvent?
    b. Which corporate entities, if any, were insolvent at the time Plaintiff and Defendants entered into their convertible note agreements?
    c. What would the legal impact be, if any, if Plaintiff was aware that Joey New York, Inc. was insolvent at the time the parties entered into the convertible note agreements?
    d. What would the legal impact be, if any, if Plaintiff was aware that any of the other corporate defendants was insolvent at the time the parties entered into the convertible note agreements?
    e. What would the legal impact be, if any, if Plaintiff was aware or should have been aware that the corporate defendants would be unable to pay back the loans in a timely fashion at the time the parties entered into the convertible note agreements?

3. The individual Defendants testified that they each personally invested at least hundreds of thousands of dollars, and in some cases more than $1 million, in the corporate entities. The individual Defendants also testified that, during the same time that some of them were transferring money from the corporate accounts into their personal accounts, they were also transferring money from their personal accounts into the corporate accounts. Assuming I credit this testimony, what import, if any, does this testimony have when considering Plaintiff's claim for constructive fraudulent conveyance?

4. Defendants Richard Roer and Richard Chancis testified that although they transferred money from the corporate entities into their personal accounts, they did so either to (1) reinvest that money into the business, (2) pay off business expenses that they made using those personal credit cards, or (3) transfer that money to the other corporate entities. Assuming I credit this testimony, what import, if any, does this testimony have when considering Plaintiff's claim for constructive fraudulent conveyance?

5. Related to Questions 3 and 4, suppose I find liability as to fraudulent conveyance. When calculating damages, should I consider the personal loans and/or personal investments the individual Defendants made in the corporate entities?

6. Are damages really additive? Suppose I find for Plaintiff as to liability for all claims. Setting aside the issue of punitive damages, does Plaintiff receive separate damages for each theory of liability? If so, wouldn't that also create the issue of double counting and/or an unfair windfall in Plaintiff's favor?

7. Identify where, if at all, in the record there is evidence showing corporate expenses of corporate Defendants between February 7, 2017 and May 12, 2017.

8. Identify where, if at all, in the record there is evidence showing corporate expenses of corporate Defendants between May 12, 2017 and the date the Second Note went into default.

9. Is Plaintiff seeking liquidated damages? If so, in what amount is Plaintiff seeking in liquidated damages? What is the basis for Plaintiff seeking liquidated damages?

10. In paragraph 90 of the First Amended Complaint it states that "Among other things, EMA is ordinarily entitled to convert each of the Notes until it owns 4.9 % of JOEY shares initially, and up to 9.9% upon providing certain notification pursuant to the agreements. It may then sell the shares, and again convert the Notes until it once again owns 4.9% of shares of JOEY (or 9.9% upon providing notification), sell the shares, and keep repeating the process until each Note is entirely converted." What does it mean for a Note to be "entirely converted"?

11. In paragraph 105 of the First Amended Complaint it states that "Joey Chancis, and her representatives made misrepresentations of material facts to plaintiff as set forth above, including without limitation falsely misrepresenting to plaintiff that JOEY intended to use the funds obtained from plaintiff to finance the JOEY's expansion of storefront Botox and beauty clinics throughout the State of Florida, New York and California."

    a. What is the evidence in the record that demonstrates that Defendants did not "use the funds obtained from plaintiff to finance the JOEY's expansion of storefront Botox and beauty clinics throughout the State of Florida, New York and California."?
    b. What is the evidence in the record that demonstrates that Defendants did "use the funds obtained from plaintiff to finance the JOEY's expansion of storefront Botox and beauty clinics throughout the State of Florida, New York and California."?

12. In my September 22, 2019 Opinion & Order in this case, I granted summary judgment as to liability for Plaintiff's costs and expenses, including reasonable attorney's fees, related to the breach of contract and breach of guaranty claims. (Doc. 38, at 15.) In its pre-trial brief, Plaintiff argued that it was entitled to attorney's fees. (Doc. 60, at 3, 15, 18, 81.) What proof, if any, did Plaintiff provide at trial about the amount of attorney's fees and costs to which Plaintiff is entitled? Am I permitted to consider any evidence beyond what was submitted at trial?

13. <u>For Plaintiff</u>: Please provide the exact number and breakdown of the damages you seek, including the justification for that request.

SO ORDERED.

Dated: August 19, 2021
      New York, New York

                                             Vernon S. Broderick
                                             United States District Judge